# United States Court of Appeals
## For the First Circuit

No. 08-2535

HOSTAR MARINE TRANSPORT SYSTEMS, INC.,

Plaintiff, Appellant,

v.

UNITED STATES,
DEPARTMENT OF INTERNAL REVENUE SERVICE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Timothy J. Burke, with whom Burke & Associates, was on brief
for appellant.
Bridget M. Rowan, Attorney, Tax Division, Department of
Justice, with whom John A. DiCicco, Acting Assistant Attorney
General, Kenneth L. Greene, Attorney, Tax Division, and of counsel
Michael K. Loucks, United States Attorney, were on brief for
appellee.

January 7, 2010

**TORRUELLA**, **Circuit Judge**.   This is an appeal from a denial of a tax refund.  The taxpayer, Hostar Marine Transportation Systems, Inc. ("Hostar"), a manufacturer of hydraulic boat trailers, seeks a refund of federal excise taxes in the amount of $2,861.30 plus interest.   The United States counterclaimed for $195,773 plus interest on Hostar's as yet unpaid taxes.

The United States District Court for the District of Massachusetts granted the United States' (1) motion to dismiss Hostar's claim to have suffered a violation of due process, (2) motion for summary judgment on Hostar's claim that it was erroneously assessed the taxes, and (3) motion for summary judgment on the United States' counterclaim.   On appeal, Hostar challenges each of the district court's rulings.  After careful consideration, we affirm those rulings.

## I.  Background

We outline the statutes, facts, and procedural history relevant to the issues on appeal in this case.[1]   The issues on appeal are whether Hostar's hydraulic boat trailers (1) qualify as "semitrailers" or "truck trailers" for purposes of section 4051 of the Internal Revenue Code ("I.R.C."); (2) qualify for the exclusion

---

[1]   For more information, see the decisions below: Hostar Marine Transp. Sys., Inc. v. United States (Hostar I), No. 05-10111-DPW, 2005 U.S. Dist. LEXIS 10938 (D. Mass. May 26, 2005); Hostar Marine Transp. Sys., Inc. v. United States (Hostar II), No. 06-10834-DPW, 2008 U.S. Dist. LEXIS 43800 (D. Mass. June 3, 2008); Hostar Marine Transp. Sys., Inc. v. United States (Hostar III), No. 06-10834-DPW, 2008 U.S. Dist. LEXIS 82671 (D. Mass. Oct. 16, 2008).

provided in section 4051(a)(3) of the I.R.C. concerning gross vehicle weight ("GVW"); and (3) qualify for the exception provided in 26 C.F.R. § 48.4061(a)-1(d)(2)(ii) concerning "[c]ertain vehicles specially designed for offhighway transportation."

**A. Statutes: I.R.C. § 4051 and 26 C.F.R. § 48.4061(a)-1**

**1. I.R.C. § 4051**

Section 4051(a) of the I.R.C., concerning the imposition of tax on heavy trucks and trailers sold at retail, imposes "on the first retail sale . . . a tax of 12 percent of the amount for which the [applicable truck trailer and semitrailer chassis and bodies are] so sold." I.R.C. §§ 4051(a)(1)(C)-(D). One district court has described the general purpose of this excise tax as follows:

> to ensure that those entities which enjoy the use of the public roads pay for their upkeep. To put it differently, the tax forces those entities that cause the most damage to the public roads, and often benefit economically the most from them, to pay for the consequences of their use.

Worldwide Equip. v. United States, 546 F. Supp. 2d 459, 468 (E.D. Ky. 2008).

**2. Exclusion Concerning Gross Vehicle Weight**

Section 4051 of the I.R.C. lists exclusions from this tax. The exclusion at issue on appeal in this case is the following: "The tax . . . shall not apply to truck trailer and semitrailer chassis and bodies, suitable for use with a trailer or semitrailer which has a [GVW] of 26,000 pounds or less (as

-3-

determined under regulations prescribed by the Secretary [of the Treasury])." I.R.C. § 4051(a)(3).

The GVW is defined in the Treasury Regulations. According to these regulations:

> For purposes of this section[,] the term "gross vehicle weight" means the maximum total weight of a loaded vehicle. Except as otherwise provided . . ., such maximum total weight shall be the [GVW] rating of the article as specified by the manufacturer or established by the seller of the completed article, unless the [IRS] Commissioner finds that such rating is unreasonable in light of the facts and circumstances in a particular case.

26 C.F.R. § 145.4051-1(e)(3).

### 3. Exception Concerning Offhighway Transportation

Beyond the explicit exclusions section 4051 of the I.R.C. itself lists, the Treasury Regulations include certain limits and exceptions to this excise tax. The exception at issue on appeal in this case applies to "[c]ertain vehicles specially designed for offhighway transportation." 26 C.F.R. § 48.4061(a)-1(d)(2)(ii). That exception requires that the vehicle meet two criteria. The vehicle must satisfy a design test, in that it must be "specially designed for the primary function of transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enumerated operations . . . ." Id. To qualify for the exception

-4-

to this excise tax, the vehicle must <u>also</u> satisfy a use test, in that, "by reason of such special design, the use of such vehicle to transport such load over the public highways is substantially limited or substantially impaired."  <u>Id.</u>

### B.  Facts

Hostar reports that it manufactures four models of hydraulic boat trailers (HPT, HST, HSTY, and HHT), three of which (HPT, HST, and HHT) are capable of on-road use and one of which (HSTY) is not.

### 1.  Hostar's Competitors

Hostar states that it has competitors in the United States and Canada that also manufacture hydraulic boat trailers. Hostar alleges, however, that it is the only such manufacturer whose trailers have been determined by the IRS not to qualify for exemption pursuant to Treasury Regulations §§ 48.4061(a)-1(d)(2)(i) and 48.4061(a)-1(d)(2)(ii).  This alleged disparate treatment is central to Hostar's claim to have suffered a violation of due process.

### 2.  Purpose of Hostar's Trailers

Hostar describes the purposes of hydraulic boat trailers as being "to launch and retrieve boats from the water, to move boats into and out of repair facilities and paint booths, to move them about the boat yard, yacht club, marina or boat leadership, and to set boats on keel blocking and boat stands for winter

storage." Hostar claims that "[t]he main function or purpose of a hydraulic trailer is not that of highway transporting." Rather, Hostar asserts, "[t]he primary function of Hostar's Hydraulic Boat Trailers is for use in boat yards and rarely on the highway due to the cost and highly specialized nature of the equipment." Hostar has provided affidavits from its customers that Hostar claims "establish that Hostar's trailers are used in boatyards and rarely on the highway."

### 3. Design of Hostar's Trailers

Hostar states that hydraulic boat trailers are constructed with "stub axles," which attach a single wheel to the trailer, as opposed to "through axles," which are more common, attach two wheels to the trailer, and are used on highway transport trailers. Hostar asserts that the design of the stub axle, which features an "open-center," "enables the operations of ramp launching, retrieving[,] and setting a boat on the ground, in a repair facility or in a storage building" but renders these types of axles vulnerable to "extraordinary wear and tear on the highway."

Hostar reports that it does not build "lowboy" trailers. Hostar states that almost all transporting of boats on highways is accomplished on such trailers. In contrast to hydraulic boat trailers, "lowboy" trailers have "through axles" (instead of "stub axles"), a full bed or cross beams (as opposed to an open center

design), no hydraulic components, are not submersible, and are similar to trailers used for moving construction equipment.

### 4. Gross Vehicle Weight of Hostar's Trailers

At the time of sale (between 1994 and 1996), according to Hostar's own documentation (through both the Vehicle Identification Numbers and the Certificates of Origin), each of Hostar's fourteen trailers at issue in this case had a GVW exceeding 26,000 pounds. The trailers' GVWs thus precluded the exclusion from the tax assessed pursuant to section 4051(a) of the I.R.C. at issue on appeal in this case. See supra Part I(A)(2). On November 18, 1998, an unknown entity revised all of the Certificates of Origin for these fourteen trailers to reflect lower GVWs. Eight of the trailers then reflected GVWs below 26,000 pounds and the remaining six reflected GVWs still in excess of 26,000 pounds.

### C. Procedural History

### 1. IRS Assessment

Between January 7, 1994 and December 31, 1996, Hostar sold the fourteen trailers at issue in this case. Between April 1997 and October 1997, an IRS revenue agent audited Hostar. On or about May 18, 2000, pursuant to section 4051(a) of the I.R.C., the IRS assessed excise taxes against Hostar with respect to the sale of the fourteen boat trailers and notified Hostar such payments were due. See Hostar I, 2005 U.S. Dist. LEXIS 10938, at

-7-

*2.  In January and June 2001, the I.R.S. applied overpayment credits to Hostar's tax assessments totaling $271.11.  Id. at *3.

### 2.  Hostar I

Hostar declined to pay the tax assessed against any of its hydraulic boat trailers before submitting its first complaint in this matter.  On May 26, 2005, the U.S. District Court for the District of Massachusetts granted the United States' motion to dismiss (1) Hostar's request for a refund of $271.11 plus interest and a declaration that the twelve percent excise tax assessed against it pursuant to 26 U.S.C. § 4051(a) is exempted by I.R.S. regulations and (2) Hostar's request for abatement of the tax because of an alleged violation of due process.  Id. at *1.  The district court determined that it had no jurisdiction over the question of whether an excise tax was due until after Hostar paid the tax.  Id. at *4-5.  The district court noted jurisdiction would be conferred on the court if Hostar paid tax on a minimum of one trailer for one quarter.  Id. at *5 n.1.  The district court further determined that Hostar's allegation of suffering a violation of due process was equally unavailing because Hostar had named the wrong defendant and insufficiently pled a Bivens action. Id. at *9-12.  Finally, the district court noted that its decision to grant the United States' motion to dismiss was further bolstered by the fact that Hostar exceeded the statute of limitation in filing its complaint.  Id. at *15-16.

### 3. Hostar's 2005 Complaint

Hostar did not appeal the district court's decision in Hostar I. Rather, on or about April 26, 2005, Hostar paid the IRS the tax assessed on the sale of one boat trailer and filed a claim for a refund of the paid sum. See Hostar II, 2008 U.S. Dist. LEXIS 43800, at *4.

On May 9, 2006, Hostar filed in the U.S. District Court for the District of Massachusetts a complaint against the United States. Asserting its rights under 26 U.S.C. § 7422(a) (providing for civil actions for refunds concerning, inter alia, "internal revenue tax alleged to have been erroneously or illegally assessed or collected"), Hostar claimed that it had been erroneously assessed the excise tax pursuant to section 4051(a) of the I.R.C.[2] Hostar alleged two counts. In Count I, Hostar claimed that the tax assessment was erroneous because, pursuant to Treasury Regulations §§ 48.4061(a)-1(d)(2)(i) and 48.4061(a)-1(d)(2)(ii), its hydraulic boat trailers were exempted from the tax. In Count II, Hostar claimed that it suffered a violation of due process because the United States, in an unjustifiable and discriminatory violation of its duty of consistency, assessed the tax only against Hostar despite knowing that some of Hostar's competitors in the United

---

[2] Hostar's complaint stated that the portion of the I.R.C. pursuant to which it has been assessed excise tax is "4061(a)." It is clear from the complaint and Hostar's brief on appeal, however, that Hostar meant to write "4051(a)." Section 4061 of the I.R.C. was repealed in 1984.

-9-

States and Canada also manufacture hydraulic boat trailers. Hostar requested judgment against the United States in the amount of $2,861.30 plus statutory interest and an abatement of the assessment against it.

### 4. The Government's 2006 Answer and Counterclaim

By June 20, 2006, Hostar had still not paid the outstanding tax the IRS assessed on Hostar's hydraulic boat trailers in 2000. Including interest and penalties, the United States calculated that Hostar then owed $122,664.76.

On July 17, 2006, the United States filed its answer, which the United States amended on July 31, 2006 to include a counterclaim. The United States demanded judgment dismissing Hostar's action and granting to the United States its costs. The United States stated that, despite the notices and demands it sent Hostar, Hostar had refused or neglected to pay in full excise taxes on its sale of hydraulic boat trailers assessed in 2000 for tax periods between 1994 and 1996. The United States thus asserted a counterclaim against Hostar demanding judgment in favor of the United States in the amount of $195,773.71 plus interest and other statutory additions accruing from and after June 26, 2006. Contrary to the single trailer on which Hostar paid an excise tax and for which it claimed a refund, the United States ultimately asserted that fourteen trailers were at issue in this case.

**5.  The Government's 2007 Motion to Dismiss and Hostar II**

On May 18, 2007, the United States filed a motion to dismiss, with prejudice, Count II of Hostar's complaint, concerning the violation of due process Hostar alleged it suffered.  The United States provided three grounds for its requested dismissal. First, the United States claimed that Hostar was precluded by collateral estoppel from relitigating this issue because the same cause of action was dismissed in a previous action between Hostar and the United States.  Hostar II, 2008 U.S. Dist. LEXIS 43800, at *5; see also Hostar I, 2005 U.S. Dist. LEXIS 10938, at *16. Second, the United States claimed that the district court lacked jurisdiction over Count II because the United States had not waived its sovereign immunity.  Third, the United States claimed that Hostar's allegation that it was entitled to relief from this tax because other taxpayers had not paid their taxes failed to state a claim as a matter of law, pursuant to Fed. R. Civ. P. 12(b)(6).  On June 3, 2008, the district court, concluding that Hostar had failed to state a due process claim upon which relief can be granted, dismissed Count II of Hostar's complaint.  Hostar II, 2008 U.S. Dist. LEXIS 43800, at *17.  The district court noted that, unlike in Hostar I, the court had jurisdiction in Hostar II because Hostar had paid the tax assessed on one trailer.  Id. at *5-6.

**6.  The Government's 2008 Motion for Summary Judgment and <u>Hostar III</u>**

On June 30, 2008, the United States filed a motion for summary judgment on both Count I of Hostar's complaint, concerning the tax Hostar alleged it was erroneously assessed, and also on the United States' counterclaim.  On October 16, 2008, the district court, concluding that Hostar "failed to show that the IRS wrongfully or incorrectly assessed the excise tax on Hostar boat trailers for the period of March 31, 1994 to December 31, 1996," granted the United States' motion for summary judgment on both Count I of Hostar's claim and also on the United States' counterclaim.  <u>Hostar III</u>, 2008 U.S. Dist. LEXIS 82671, at *23-24. The following day the clerk entered judgment in favor of the United States for $223,554.32 with post-judgment interest.

On December 2, 2008, Hostar timely filed a notice of appeal to this court concerning the district court's final judgments from June 3 (concerning dismissal) and October 17, 2008 (concerning summary judgment).

## II.  <u>Discussion</u>

### A.  Standard / Scope of Review

Our standard / scope of review is the same -- <u>de novo</u> -- for all issues on appeal in this case:

> We review de novo the district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), accepting as true all well-pleaded facts in the complaint and drawing all reasonable inferences in the plaintiffs'

-12-

> favor. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.
>
> We also review de novo the district court's grant of summary judgment, drawing all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation. For review of both summary judgment and dismissal under Rule 12(b)(6), we may affirm on any basis apparent in the record.

Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (internal citations and quotation marks omitted).

In tax refund suits, assessments by the IRS Commissioner have "the support of a presumption of correctness." Welch v. Helvering, 290 U.S. 111, 115 (1933). Thus, "taxpayers bear the burden of proving that a tax deficiency assessment is erroneous." Delaney v. Comm'r, 99 F.3d 20, 23 (1st Cir. 1996). We are also mindful of "the principle that exemptions from taxation are to be construed narrowly." Bingler v. Johnson, 394 U.S. 741, 751-52 (1969).

### B. Solvency

Hostar contends that it is undisputed that Hostar would go out of business if subjected to the excise tax. The United States responds that, because only a relatively narrow subset of Hostar's trailers is subject to excise taxes under section 4501 of the I.R.C., Hostar's contention is "improper and belied by the record." Hostar has offered no factual support for its contention,

-13-

nor has it identified any case law that holds that the effect an excise tax would have on a taxpayer should factor into whether the taxpayer is subjected to the excise tax. We therefore consider this issue waived. United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997) ("We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation.").

### C. Hostar's Due Process Claim Based on Purported "Disparate Treatment"

Hostar argues that the IRS has treated differently two groups: Canadian manufacturers who are competitors and American competitors. Hostar asserts that there is a general principle that "the [IRS] has a duty to act consistently and cannot treat similarly situated taxpayers disparately." See Int'l Bus. Machs. Corp. v. United States (IBM), 343 F.2d 914 (Ct. Cl. 1965) and Sirbo Holdings, Inc. v. Comm'r (Sirbo I), 476 F.2d 981 (2d Cir. 1973). In other words, Hostar contends, "the United States is required to treat all of the taxpayers in the same manner." Because similarly situated manufacturers of boat trailers were not subject to the section 4051 tax, Hostar argues that the district court erred when it dismissed Hostar's claim that the United States improperly discriminated against it in assessing the tax against Hostar.

When describing "similarly situated" manufacturers, Hostar identifies both Canadian and domestic competitors that it claims were not subjected to the disputed tax. As to Canadian

competitors, we do not accept any argument that domestic and foreign corporations are "similarly situated" and so there can be no claims of discrimination in violation of the Due Process Clause. As to American competitors, Hostar argues only arbitrary treatment, purportedly in violation of the Due Process Clause. As support for this argument, Hostar cites language from the Court of Claims' decision in IBM and from Justice Frankfurter's concurrence in United States v. Kaiser. See IBM, 343 F.2d at 920 ("Equality of treatment is so dominant in our understanding of justice that discretion, where it is allowed a role, must pay the strictest heed."); United States v. Kaiser, 363 U.S. 299, 308 (1960) (Frankfurter, J., concurring) ("The [IRS] Commissioner cannot tax one and not tax another without some rational basis for the difference. And so, assuming the correctness of the principle of 'equality,' it can be an independent ground of decision that the Commissioner has been inconsistent, without much concern for whether we should hold as an original matter that the position the Commissioner now seeks to sustain is wrong."). We address that claim. Hostar also cites two Tax Court memoranda to bolster its claim, even though it acknowledges that these memoranda apply to limitations on the IRS Commissioner's discretion in offering settlement terms to taxpayers, not to the IRS Commissioner's assessment of taxes. See Elghanian v. Comm'r, T.C. Memo. 2005-37, 2005 Tax Ct. Memo LEXIS 34, at *27-28 (U.S. Tax Ct. 2005) ("Tax

-15-

laws must be applied as uniformly as possible. However, the [IRS] Commissioner is not required to offer a settlement to one taxpayer consistent with that offered to other similarly situated taxpayers, absent proof that a taxpayer has been singled out for adverse treatment based on impermissible considerations such as race or religion, and absent contractual agreements to the contrary." (internal citation omitted)); Stewart v. Comm'r, T.C. Memo. 2005-212, 2005 Tax Ct. Memo LEXIS 212, at *8-9 (U.S. Tax Ct. 2005) ("Our responsibility as a Court is to apply the law to the facts of the case before us; how the Commissioner treated other taxpayers is generally irrelevant in making that determination, absent proof that a taxpayer has been singled out for adverse treatment based on impermissible considerations such as race, religion, or other arbitrary classification, and absent contractual agreements to the contrary . . . ." (internal citations omitted)).

It has been said, as Hostar asserts, that the IRS has a duty to act consistently toward similarly situated taxpayers. Sirbo I, 476 F.2d at 987 ("[T]he Commissioner [of the IRS] has a duty of consistency toward similarly situated taxpayers . . . ."); Bunce v. United States, 28 Fed. Cl. 500, 508 (1993) (observing that the IRS has a "duty to treat similarly situated taxpayers consistently").

However, even "accepting as true all well-pleaded facts" in Hostar's complaint and "drawing all reasonable inferences in"

Hostar's favor, Hostar's claimed suffering of a violation of due process does not withstand our de novo review. The goal of treating similarly situated taxpayers consistently is general, not strict. The Tax Court's statement that tax laws must be applied as uniformly "as possible" indicates that the tax laws do not need to be strictly applied uniformly. Contrary to Hostar's assertion, the courts, including the Second Circuit, the Tax Court, the Court of Claims, and the Court of Federal Claims, have not, in fact, prohibited the IRS from treating similarly situated taxpayers disparately. We agree with these courts' reasoning, as described below.

The Second Circuit declared as far back as 1975 that, "[w]hile even-handed treatment should be the [IRS] Commissioner's goal, perfection in the administration of such vast responsibilities cannot be expected." Sirbo Holdings, Inc. v. Comm'r (Sirbo II), 509 F.2d 1220, 1222 (2d Cir. 1975) (internal citation omitted).

The Tax Court similarly declared around the same time that:

> It has long been the position of this Court that our responsibility is to apply the law to the facts of the case before us and determine the tax liability of the parties before us; how the Commissioner may have treated other taxpayers has generally been considered irrelevant in making that determination.

Davis v. Comm'r, 65 T.C. 1014, 1022 (1976). Four years later, the Tax Court noted this "well-established position of this Court," while observing that there could be exceptions: "It is conceivable, however, that there may be situations where a taxpayer should be accorded some relief if he were selected for audit on a constitutionally impermissible criterion although such situations are extremely rare." Penn-Field Indus., Inc. v. Comm'r, 74 T.C. 720, 722 (1980).

The Court of Claims also has determined that, despite the likelihood that the IRS had taxed similarly situated individuals differently, "[d]isparate treatment, however, is not a valid basis for a tax refund. A failure of the IRS to assess deficiencies against some taxpayers does not preclude an assessment against other taxpayers." Ray v. United States, 25 Cl. Ct. 535, 541 (1992).

Finally, the Court of Federal Claims likewise has ruled that:

> The mere fact that another taxpayer has been treated differently from the plaintiff does not establish the plaintiff's entitlement. The fact that all taxpayers or all areas of the tax law cannot be dealt with by the Internal Revenue Service with equal vigor and that there thus may be some taxpayers who avoid paying the tax cannot serve to release all other taxpayers from the obligation. The Commissioner's failure to assess deficiencies against some taxpayers who owe additional tax does not preclude the Commissioner from assessing deficiencies against other taxpayers who admittedly owe additional taxes on the

-18-

> same type of income. A taxpayer cannot premise its right to an exemption by showing that others have been treated more generously, leniently or even erroneously by the IRS. The fact that there may be some taxpayers who have avoided paying a tax does not relieve other similarly situated taxpayers from paying their taxes.

City of Galveston, Texas v. United States, 33 Fed. Cl. 685, 707-08 (1995).

Moreover, Hostar's reliance on IBM is misplaced. The IBM ruling has been limited by subsequent courts to cases involving private rulings, which were at issue in IBM but not in the instant case. We agree with the Eleventh Circuit, for example, which recognized that "courts have placed limits on the equality principle" in cases similar to IBM, citing the example that "taxpayers who have not requested or received private letter rulings from the IRS will not succeed on a claim of discriminatory treatment because other taxpayers have received private letter rulings on the tax consequences of the same activities." Baker v. United States, 748 F.2d 1465, 1469 n.9 (11th Cir. 1984).

Despite the goal of consistency in treatment, the IRS is not prohibited from treating such taxpayers disparately. Rather than being a strict, definitive requirement, the principle of achieving parity in taxing similarly situated taxpayers is merely aspirational. Dicta in a concurring Supreme Court opinion from five decades ago, Kaiser, 363 U.S. at 308, which itself seemed to hedge its position (by using the conditional language of "assuming"

-19-

a principle to be true), is not sufficient to overcome this view. Moreover, we believe that the IRS has good reason to retain this flexibility. As the district court noted:

> There are practical considerations which counsel in favor of limiting litigation regarding the general duty of consistency in the enforcement of taxes. A broadly enforceable duty could give rise to distracting disputes not over whether a tax is applicable, but rather over the management of an administrative and enforcement agency. Moreover, there is the prospect for competitive mischief if, as here, a tax refund plaintiff seeks broad discovery, on the grounds of a disparate enforcement theory, regarding its competitor's financial and commercial information both from the IRS and from a third party with whom it competes.

Hostar II, 2008 U.S. Dist. LEXIS 43800, at *16.

Hostar has not overcome what we find to be the IRS's prerogative to tax it but not its competitors. Thus, we affirm the district court's grant of the United States' motion to dismiss Hostar's claim to have suffered a violation of due process.

### D. Hostar's Erroneous Assessment Claim

Having established that the IRS's alleged differential tax treatment of Hostar and its American competitors did not constitute discrimination in violation of the Due Process Clause, we now apply the law to the facts of the case before us to determine whether the tax was properly assessed against Hostar. We conclude that the tax was properly assessed against Hostar because Hostar's hydraulic boat trailers (1) do qualify as "semitrailers"

or "truck trailers" for purposes of section 4051 of the I.R.C.; (2) do not qualify for the exclusion provided in section 4051(a)(3) of the I.R.C. concerning GVW; and (3) do not qualify for the exception provided in 26 C.F.R. § 48.4061(a)-1(d)(2)(ii) concerning "[c]ertain vehicles specially designed for offhighway transportation." Accordingly, we affirm the district court's grant of the United States' motion for summary judgment on Hostar's claimed exemption from the section 4051 tax excised and the district court's grant of the United States' motion for summary judgment on the United States' counterclaim.

### 1. I.R.C. § 4051 - Definitions of "Semitrailer" and "Truck trailer"

Noting that the drafters of the I.R.C. could have but did not define the terms "semitrailer" and "truck trailer," Hostar argues that the district court erred in finding as a matter of law that Hostar's boat trailers are semitrailers and truck trailers for the purposes of section 4051 of the I.R.C.

In construing the terms of a statute, we accord the text its plain and ordinary meaning. See In Re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 168 (1st Cir. 2009). Where a phrase is not defined in a statute itself, we can look to the dictionary for clarification of the plain meaning of the words. Taing v. Napolitano, 567 F.3d 19, 25 (1st Cir. 2009). "Semitrailer" is defined as "a freight trailer that when attached is supported at its forward end by the fifth wheel device of the

-21-

truck tractor,"[3] and "truck trailer" is defined as "a nonautomotive freight vehicle to be drawn by a motortruck." Webster's Third New International Dictionary Unabridged 2065, 2454 (2002).[4]  We agree with the district court's observation that "Hostar's trailers attach to a motor vehicle and carry boats, which are a type of freight."  Hostar III, 2008 U.S. Dist. LEXIS 82671, at *10.  As can be seen in photographs found in the record, Hostar's boat trailers are semitrailers because they are supported at their forward end by the truck tractor.  Hostar's citation to a Wikipedia entry on "semitrailer," which does not list boat trailers, is not inconsistent because the entry's illustrations are merely examples and not exhaustive.  Like the district court, we therefore find that Hostar's hydraulic boat trailers are "semitrailers" and "truck trailers" for the purposes of section 4051 of the I.R.C.

---

[3]  According to a deposition on October 31, 2007, from Dwight Stimson, III, a Hostar executive, the "fifth wheel" here does not, in fact, refer to a fifth wheel but rather the connection point on the tow vehicle.

[4]  The same dictionary defines "trailer" as, most relevant to the sense used in this case, "a nonautomotive highway or industrial-plant vehicle designed to be hauled (as by a tractor, motortruck, or passenger automobile)."  Webster's Third New International Dictionary Unabridged 2424.  That dictionary also defines "automotive" as "containing within itself the means of propulsion" or "of, relating to, or concerned with vehicles or machines that propel themselves (as automobiles, trucks, airplanes, motorboats)." Id. at 148.

## 2. I.R.C. § 4051(a)(3) - Exclusion for Gross Vehicle Weight

An unknown entity amended the recorded GVWs of the fourteen trailers after Hostar sold the trailers and the IRS conducted its audit of them. The district court found that there was no demonstration of "a genuine issue of fact for trial as to whether the trailers at issue were exempt from taxation" where Hostar presented the revised GVW measurements for the majority of its hydraulic boat trailers at issue in this case. Id. at *23.

On appeal, Hostar argues that "the District Court's conclusion was unreasonable and improper fact finding in light of the substantial facts which were in evidence which are contrary to those found by the Court." Specifically, Hostar contends that the district court erred not only in considering the fact that the United States "could find nothing wrong with the second series of [GVW] calculations" but also by choosing to ignore Hostar's "clear statements."

Although we find no error with the amended GVWs, the original GVW records still stand, meaning that none of Hostar's fourteen hydraulic boat trailers at issue in this case are excluded from the excise tax imposed by section 4051 of the I.R.C. As discussed below, according to the Treasury Regulations, the inconsistent records of the GVWs must be resolved in favor of the original, higher weight, as specified by Hostar itself.

-23-

First, the Treasury Regulations provide that the GVW is "specified by" Hostar, the "manufacturer or . . . seller of the" hydraulic boat trailers at issue in this case, "unless the [IRS] Commissioner finds that such rating is unreasonable in light of the facts and circumstances in a particular case." See 26 C.F.R. § 145.4051-1(e)(3)(i). Second, the Treasury Regulations provide that inconsistencies in GVW measurements should be resolved in favor of the highest weight. Id. § 145.4051-1(e)(3)(iv) (Where there are inconsistencies in GVW ratings, "the highest of such ratings will be considered to be the seller's [GVW] rating specified or established for purposes of the tax imposed by section 4051(a)(1)."); see also Merhow Indus. v. United States, 517 F. Supp. 1221, 1227-28 (N.D. Ind. 1981).

We thus conclude that between the two sets of GVW ratings -- the higher one from the time of the sale and the lower one from after both the sale and the IRS audit -- the former set is properly considered to be the GVWs at issue in this case.

### 3.  26 C.F.R. § 48.4061(a)-1(d)(2)(ii) - Exception for "Certain vehicles specially designed for offhighway transportation"

Hostar argues that the district court erred when it concluded "that Hostar has failed to demonstrate a genuine issue of fact as to whether its boat trailers qualify for the off-highway transportation exception to the excise tax." Hostar III, 2008 U.S. Dist. LEXIS 82671, at *20. Hostar maintains that its hydraulic

-24-

boat trailers qualify under both parts of this exception, concerning (a) special design and (b) substantially limited / impaired use.

### a. Special Design

Hostar's hydraulic boat trailers are not, as the Treasury Regulations require to qualify for the off-highway transportation exception, "specially designed for the primary function of transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enumerated operations." See 26 C.F.R. § 48.4061(a)-1(d)(2)(ii).

We find that, as another circuit court has held, "[t]he test for taxability under [§ 4051(a)(1)] is primary design, not primary use . . . . Indeed a use test would be unworkable since there would be no way of knowing how a given article would be used by the consumer at the time of sale." Dillon Ranch Supply v. United States, 652 F.2d 873, 881 (9th Cir. 1981). Accordingly, in considering this prong of the off-highway transportation exception, we must evaluate the design of Hostar's hydraulic boat trailers; their use is irrelevant.

Hostar's trailers do exhibit some special design features, but those features either are irrelevant to their on- versus off-highway function or else support their on-highway

-25-

function. Among other things, the trailers contain open-center frames, hydraulic components, and stub axles. We find no evidence in the record that the trailers are fitted with these special design features because of the roads on which they are carried, whether they are on- or off-highway, and not simply because of the trailers' particular cargo, boats. Other features found on the trailers emphatically point towards their special design for on-highway transportation. For example, Hostar designed its hydraulic boat trailers to be compliant with U.S. Department of Transportation (DOT) regulations for highway use. According to the 2007 Stimson deposition, Hostar intentionally manufactured the trailers at issue in this case to feature DOT-required braking systems (brakes on all wheels), lighting systems (red stop tail and turn lights at the rear of the frame as well as amber clearance lights on the side of the frame), tires (radial tires capable of being used on a highway), tire ratings, and wheel coverings (that protect debris from flying up and damaging a boat bottom). The trailers, despite their weights and loads, also can travel at normal highway speeds.

Furthermore, there is evidence that Hostar's trailers are designed for transporting boats on public highways, even if the trailers can also transport boats on private roadways. Hostar's own promotional literature, the significance of which Hostar unpersuasively attempts to limit by calling it "puffing," describes

its hydraulic boat trailers as on/off-highway vehicles. For example, one such brochure is entitled "Hostar Hydraulic Trailers for Highway and Yard" and lists "Haulers" as the first type of intended operation. The brochure goes on to note that Hostar's HPT Series of trailers is "known for its highway tracking ability"; that its HST Series of trailers is "for . . . highway . . . transporting"; and that its HHT Series of trailers are "highway trailers for road tractors . . . [and the f]irst choice of professional haulers." The brochure specifies that only one type of Hostar trailer, the HSTY Series, is "for yard use only," and it is that series of Hostar trailers that was not subject to excise taxes pursuant to section 4051(a) of the I.R.C.

In addition to Hostar's advertising materials, the company's own invoices emphasize the ability of the trailers to function outside boatyards. Invoices for thirteen of the fourteen trailers at issue in this case indicate the trailers' weight capacities "over the road" as distinct from "in the yard," and the fourteenth invoice only notes the capacity "over the road."

Where other courts have considered similar dual use vehicles, they have also found the vehicles not to qualify for the special design component of this exception. See Worldwide Equip., 546 F. Supp. 2d at 464 (concluding that a Mack Trucks, Inc. RD888SX coal hauler does not satisfy the off-highway vehicle exception's "special design" test because its "ability to transport coal over

public roadways is as important to its role in the coal industry as its sturdier design features which make it better suited for work in the Appalachian coal fields").

Hostar claims that affidavits from its customers establish that Hostar's trailers are "rarely" used on the highway. See supra Part I(A)(2)(b). However, the use of Hostar's trailers is irrelevant to determining whether the trailers satisfy the special design prong of the off-highway transportation exception. In any case, our analysis of those customer affidavits refute Hostar's claim. In the affidavits, owners of Hostar's hydraulic boat trailers were asked, inter alia, what percentage "of trailer use has been and is in off-highway work." One respondent replied "10%," two replied "80%," one replied "85%," and one replied "98%." With the majority of responses indicating that the percentage of trailer use that has been and is in on-highway work is between fifteen and ninety percent, we do not agree that the affidavits support Hostar's contention. Rather, we find that the affidavits suggest that a significant amount of trailer use by most owners of Hostar trailers has been and is in on-highway work. But even if the use of Hostar's trailers was not so clearly in significant part for on-highway use, the design of Hostar's trailers would remain, in part, for such use and would be the determining factor for whether the "special design" test is met.

We find no evidence that Hostar's hydraulic boat trailers are specially and primarily designed for off-highway use. We thus find that Hostar's hydraulic boat trailers are not "specially designed for the primary function of transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enumerated operations." We therefore do not need to reach the question of whether Hostar's trailers transport boats "in connection with" any of the enumerated or similar operations.

### b. Substantially Limited / Impaired Use

To satisfy the "substantially limited or substantially impaired" prong of the off-highway transportation exception, the use of a vehicle to transport loads over the public highways must be so limited or impaired by reason of its special design. See 26 C.F.R. § 48.4061(a)-1(d)(2)(ii). As we found that Hostar's hydraulic boat trailers fail to satisfy the special design required in the first prong of the exception, it therefore follows that the trailers cannot be "substantially limited or substantially impaired" "by reason of such special design." See also Worldwide Equip., 546 F. Supp. 2d at 468.

### III. Conclusion

We are not persuaded that Hostar has met its burden of proving that the IRS Commissioner's presumptively correct

assessment of the excise tax pursuant to section 4051 of the I.R.C. was wrong.  For the reasons stated above, then, we **affirm** the district court's grant of (1) the United States' motion to dismiss Hostar's due process claim, (2) the United States' motion for summary judgment on Hostar's claimed exemption from the tax excised pursuant to section 4051 of the I.R.C., and (3) the United States' motion for summary judgment on the United States' counterclaim.