# United States Court of Appeals
## For the First Circuit

No. 09-1759

SAM and TONY M., by Next Friend Gregory C. Elliott;
CAESAR S., by Next Friend Kathleen J. Collins; DAVID T.,
by Next Friend Mary Melvin; BRIANA, ALEXIS, CLARE, and
DEANNA H., by Next Friend Gregory C. Elliott; and
DANNY and MICHAEL B., by Next Friend Gregory C. Elliott;
for themselves and those similarly situated,

Plaintiffs, Appellants,

v.

DONALD L. CARCIERI, in his official capacity as Governor
of the State of Rhode Island; JANE A. HAYWARD, in her
official capacity as Secretary of the Executive Office of
Health & Human Services; and PATRICIA MARTÍNEZ, in her
official capacity as Director of the Department of
Children, Youth and Families,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

Susan Lambiase, Children's Rights, with whom Marcia Robinson
Lowry, Shirim Nothenberg, Jessica Polansky, John W. Dineen, Vernon
Winters, Weil, Gotshal & Manges LLP, and Jametta O. Alston, Rhode

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

Island Office of the Child Advocate, were on brief for appellants.

Erik S. Pitchal, Assistant Clinical Professor of Law, Suffolk University Law School, for amici curiae the National Association of Counsel for Children, the Children's Law Center of Los Angeles, Youth Law Center, the Hofstra Child Advocacy Clinic, the Legal Aid Society, the Children's Advocacy Institute, Children's Law Center of Massachusetts, Lawyers for Children, Prof. Don Duquette, the Rutgers Child Advocacy Center, Children's Law Center of Minnesota, the University of Miami School of Law's Children & Youth Law Clinic, National Center for Youth Law, First Star, and Prof. Michael Dale, in support of appellants.

Andrew B. Prescott, Steven M. Richard, Nixon Peabody LLP, for amici curiae Rhode Island Affiliate, American Civil Liberties Union, in support of appellants and in favor of reversal.

Seema A. Misra, Jennifer C. Arnett, Stroock & Stroock & Lavan LLP, for amici curiae The Field Center for Children's Policy Practice & Research at the University of Pennsylvania, in support of appellants and in support of reversal.

Brenda D. Baum, Assistant Attorney General, with whom Patrick C. Lynch, Attorney General, and James R. Lee, Assistant Attorney General, Rhode Island Department of the Attorney General, were on brief for appellees.

---

June 18, 2010

---

- 2 -

**TORRUELLA**, <u>Circuit Judge</u>. This appeal raises important questions regarding an individual's capacity to sue as a representative of minors in state foster care custody alleging violations of their civil rights.

On June 28, 2007, Mary Melvin, Kathleen J. Collins, and Gregory C. Elliott (collectively, the proposed Next Friends), filed a class action suit on behalf of foster care children who are under the legal custody of Rhode Island's Department of Children, Youth and Families (DCYF). The complaint sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and alleged that by maintaining systemic deficiencies in Rhode Island's child welfare and foster care systems, the state has deprived plaintiffs of their rights under the United States Constitution and several federal statutes. The proposed Next Friends sought to pursue the present civil rights case on behalf of foster care children who are unable to sue for themselves due to their minority.[1] The district court dismissed the complaint finding that the Next Friends lacked capacity to sue on behalf of Plaintiffs.

---

[1] The complaint initially named ten children as Plaintiffs. However, three of the children were subsequently adopted and therefore, they are not currently under DCYF custody. The district court concluded that the children's adoption rendered their claims moot and Plaintiffs have not challenged this conclusion on appeal. After the district court rendered its opinion, Plaintiff Deanna H. was adopted and thus her claims are also moot. The remaining named Plaintiffs, who are identified by pseudonyms to protect their identities, are Sam and Tony M, David T., Danny and Michael M., and Caesar S.

For the reasons stated below, we reverse the district court's order and judgment dismissing the children's complaint and remand the case with instructions to allow the Next Friends to represent the named Plaintiffs in this suit.

**I.**

**A.**

Because this appeal follows the district court's dismissal of Plaintiffs' complaint, we recite the relevant facts "accepting as true all well-pleaded facts in the complaint and drawing all reasonable inferences in the plaintiffs' favor." Hostar Marine Transp. Sys., Inc. v. United States, 592 F.3d 202, 207 (1st Cir. 2010) (citing Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009)). But given that the district court made findings of fact regarding the proposed Next Friends authority to represent the children in this case, we review the court's factual findings for clear error. See Skwira v. United States, 344 F.3d 64, 72 (1st Cir. 2003).

The present suit was initiated by Rhode Island's Child Advocate, Jametta O. Alston.[2] Under Rhode Island law, the Child Advocate is endowed with the responsibility of protecting the interests and rights of children who are placed under DCYF custody.

---

[2] Defendants do not challenge the Child Advocate's statutory authority to initiate the present suit on the children's behalf.

See R.I. Gen. Laws § 42-73-7.[3]  The Child Advocate claims that due to widespread and serious deficiencies in Rhode Island's child welfare system, she endeavored to identify individuals suited to vindicate the children's constitutional rights in federal court. She explains that the persons closely connected to the children either have potential conflicts of interests with the children or declined to be involved in the suit on the children's behalf.  The Child Advocate claims that the proposed Next Friends are well-suited to litigate the present class action suit on behalf of the children who were named as Plaintiffs as they "are sincerely motivated to pursue the best interests of the children."

On June 28, 2007, the proposed Next Friends filed the present class action suit on behalf of the named Plaintiffs.[4]  The class was defined as "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect."  The complaint sought declaratory and injunctive relief against defendants, Donald L. Carcieri, in his official capacity as the Governor of Rhode Island; Jane A. Hayward in her official capacity

---

[3]  Among others, the Child Advocate has the power to recommend changes in the child welfare system and to "take all possible action including, but not limited to programs of public education, legislative advocacy, and formal legal action, to secure and ensure the legal, civil, and special rights of children" that are under DCYF custody.  R.I. Gen. Laws § 42-73-7.

[4]  Plaintiffs filed an amended complaint on September 7, 2007.

as Rhode Island's Secretary of the Executive Office of Health and Human Services; and Patricia Martínez, in her official capacity as Director of the DCYF (collectively, "Defendants"). The complaint alleged violations of the children's substantive and procedural due process rights under the Fourteenth and Fifth Amendments to the United States Constitution; deprivations of the children's liberty, privacy, and associational rights protected by the First and Fourteenth Amendments; violations of their statutory rights under the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 621; 622; 629; 671; 672; 675 and its accompanying regulations 45 C.F.R. §§ 1355-57; as well as breach of contractual obligations between the state of Rhode Island and the federal government to which the children claim to be third party beneficiaries.

The crux of Plaintiffs' complaint is that foster care children in Rhode Island are neglected and abused both physically and emotionally, and are generally deprived of the care and protection the DCYF owes to them in violation of the children's right to a safe living environment. The complaint further stated that Defendants engaged in a policy, pattern, practice or custom of placing children in foster care homes and other institutions that do not meet the children's needs, thereby depriving them of their substantive due process rights. Finally, the complaint alleged that the DCYF follows a pattern or practice of placing foster care children in temporary foster care homes, shelters, and other

- 6 -

institutions for inordinate amounts of time and fails to comply with the state's obligation under the Adoption and Child Welfare Act to provide children with safe and permanent placements.

In due course, Defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction arguing, inter alia, that the proposed Next Friends lacked standing to sue on behalf of the named Plaintiffs.[5] Defendants maintained that the children were adequately represented by guardians ad litem who were appointed by Rhode Island Family court to represent the children in family court proceedings. Additionally, Defendants claimed that the proposed Next Friends could not show they were truly dedicated to the children's best interests or that they had a significant relationship with the children.

The district court held evidentiary hearings to evaluate the proposed Next Friends' capacity to represent the children's interests. During the course of several days of hearings, the

---

[5] Although Defendants claim the proposed Next Friends lack standing to sue, we are not here concerned with whether the proposed Next Friends have suffered an injury within the context of an Article III case or controversy. From the face of the complaint it is clear that the children are the real party in interest and their standing to sue has not been challenged in this case. Morgan v. Potter, 157 U.S. 195, 198 (1895) (explaining that a Next Friend is "neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended in behalf of another"). We therefore construe Defendants' claims as challenging the proposed Next Friend's capacity to sue on behalf of the children. See Gardner by Gardner v. Parson, 874 F.2d 131, 137 n.9 (3d Cir. 1989) (explaining that Article III standing is not implicated when an individual claims "capacity to sue as representative of an incompetent" pursuant to Rule 17(c)).

- 7 -

proposed Next Friends explained their relationship with Plaintiffs and their motivation to serve as their representatives in this case. In a decision and order dated April 29, 2008, the district court granted Defendants' motion to dismiss. The court held that the family court-appointed guardians ad litem were the children's duly appointed representatives as defined in Rule 17(c) of the Federal Rules of Civil Procedure. The district court also stated that the proposed Next Friends had failed to show they had a significant relationship with the children they wanted to represent and therefore declined to allow the proposed Next Friends to serve as the children's representatives in federal court.

Plaintiffs filed this timely appeal. They challenge the district court's decision to deny Next Friend status to the proposed Next Friends. They also claim the district court erred in dismissing the suit without first ensuring that the children enjoyed adequate representation in federal court.

**B.**

Plaintiffs are foster care children who remain in the legal custody of the DCYF. It is undisputed that Rhode Island's family court has been involved in the decision-making process regarding the children's well being and interests. However, as the complaint and the record show, Plaintiffs have been placed in temporary homes, shelters, and state facilities for several years.

Plaintiffs have also been exposed to abuse and neglect, and no permanent placements have been found for them.[6]

Before addressing the legal issues raised in this appeal, we examine the children's background and their life histories within Rhode Island's child welfare and foster care systems.

**1. David T.**

David T. ("David") has been in DCYF custody since 1996. He was removed from his mother's custody due to neglect. In April 1998, David's mother lost her parental rights and the DCYF was named David's legal guardian.

In 1996, David was placed with a foster mother, Ms. Mary Melvin ("Ms. Melvin"). After living with Ms. Melvin, David was placed in shelters and later in several psychiatric facilities as he exhibited behavioral problems and was diagnosed with several psychological disorders. In December 2000, David was transferred to St. Vincent's Home, a residential treatment facility where he lived for a period of two years. In 2003, David was moved to a different treatment facility where he received individualized treatment for several emotional and psychological disorders. By November 2004, David had not been placed for adoption. David's case plan then directed that adoption was not feasible and that an

---

[6]  In their complaint, Plaintiffs claim they have suffered great harms while in DCYF custody due to the DCYF's negligence and failure to provide them with safe and permanent placements. We, however, do not advance any criteria regarding the merits of Plaintiffs' claims.

alternate permanent placement was to be found. In February 2006, David was moved to yet another psychiatric facility where he also received treatment for his mental health problems. In 2007, David was transferred to another facility in Massachusetts where he receives treatment and educational services.

### 2. Caesar

Caesar was first placed in DCYF custody in December 2002 due to neglect. Caesar was sixteen-months-old. Since then, Caesar has navigated the foster care system. He has lived in shelters, foster care homes, and temporary family placements. From January 2003 until September 2004, Caesar lived with a paternal aunt who had drug problems. Caesar was then placed with a great-aunt for nine days. Despite allegations that he was beaten at his aunt's house, in October 2004 Caesar was once again placed in his aunt's custody. In light of evidence that Caesar was beaten at his aunt's house, he was then moved to his paternal grandmother in September 2005. In 2007, the family court granted the DCYF's petition to terminate parental rights and determined that Caesar was a candidate for adoption. Caesar remains in DCYF custody.

### 3. Sam and Tony M.

Sam and Tony M. are brothers who were placed in DCYF custody in May 1999 due to allegations that their mother had substance abuse and mental health problems. The complaint details that the boys were victims of sexual and physical abuse and

neglect. After the DCYF took custody of Sam and Tony in 1999, they were placed in the home of a family friend. From 2000 to 2003, Sam and Tony were returned to their birth mother's custody. During that period, the boys were abused and neglected by their birth mother, step-father and grand-father. In 2003, Sam and Tony were once again placed in foster care. They were subsequently returned to their birth mother's custody until May 2004 when they were placed in a group care facility. In 2005, Sam and Tony were transferred to different psychiatric hospitals where they received visits from their maternal grandparents. The record reveals that the boys continue to live in separate institutions. On August 4, 2006, the family court determined that reasonable efforts to reunify Sam and Tony with their birth mother were no longer required; stated that the DCYF had filed for termination of parental rights; and decreed that Sam and Tony were candidates for adoption.

### 4. Danny and Michael B.

Due to parental neglect, siblings Danny and Michael B. have been in DCYF custody since April 2005. They were initially placed with their maternal great-grandmother. The great-grandmother, however, was unable to care for the boys and they were then placed in separate foster homes. Michael was later returned to his great-grandmother's home, while Danny was placed in a foster home where he was sexually abused. Both boys have suffered from

- 11 -

mental health problems which the complaint alleges were not properly and timely addressed by the DCYF. In July 2006, Danny was sexually assaulted in his foster home and was then moved to his great-grandmother's home where Michael resides. Danny was eventually transferred to a state group facility where he receives treatment for mental health problems. Parental rights were terminated in November 2006 and the DCYF is currently the boys' legal guardian.

## II.

We address two main issues in this appeal. First, we examine whether the children have duly appointed representatives that would preclude appointment of the proposed Next Friends in this case. Second, we examine the propriety of allowing the proposed Next Friends to represent the children in the present suit.

Rule 17(c) of the Federal Rules of Civil Procedure governs a minor or incompetent's access to federal court. It directs that a minor or incompetent may sue in federal court through a duly appointed representative which includes a general guardian, committee, conservator, or like fiduciary. Fed. R. Civ. P. 17(c)(1). If a minor lacks a general guardian or a duly appointed representative, Rule 17(c)(2) directs the court either appoint a legal guardian or Next Friend, or issue an order to

protect a minor or incompetent who is unrepresented in the federal suit. Fed. R. Civ. P. 17(c)(2).

The appointment of a Next Friend or guardian ad litem is not mandatory. Thus, where a minor or incompetent is represented by a general guardian or a duly appointed representative, a Next Friend need not be appointed. See Developmental Disabilities Advocacy Ctr., Inc. v. Melton, 689 F.2d 281 (1st Cir. 1982) (declining to appoint Next Friend where plaintiffs had general guardians or duly appointed guardians who opposed the federal suit); Garrick v. Weaver, 888 F.2d 687, 693 (10th Cir. 1989)(holding that a minor's mother lacked authority to proceed as Next Friend in federal suit where the federal court had appointed a guardian ad litem to represent the child). However, Rule 17(c) "gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent." Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist., 873 F.2d 25, 29 (2d Cir. 1989); Melton, 689 F.2d at 285 (stating that Rule 17(c) allows federal courts to appoint a Next Friend or guardian ad litem where there is a conflict of interest between the minor and her general representative).

The minor's best interests are of paramount importance in deciding whether a Next Friend should be appointed, but the ultimate "decision as to whether or not to appoint [a Next Friend or guardian ad litem] rests with the sound discretion of the district court and will not be disturbed unless there has been an abuse of its authority." Melton, 689 F.2d at 285. See also Fernández-Vargas v. Pfizer, 522 F.3d 55, 66 (1st Cir. 2008).

## III.

## A.

It is undisputed that Plaintiffs have been represented in Rhode Island family court proceedings by court-appointed guardians ad litem, also known as Court Appointed Special Advocates ("CASA attorneys").[7] The record shows that throughout the different custody and child welfare proceedings, each child was represented by court-appointed guardians ad litem or CASA Attorneys; while some children were represented by five or six guardians throughout the course of several years.

The district court found that the family court-appointed guardians ad litem or CASA attorneys were the children's duly

---

[7] Under Rhode Island law, "[a]ny child who is alleged to be abused or neglected as a subject of a petition filed in family court, . . . shall have a guardian ad litem and/or a court-appointed special advocate (CASA) appointed by the Court to represent th[e] child, all in the discretion of the court." R.I. Gen. Laws § 40-11-14. "The Office of the Court Appointed Special Advocate is an arm of the Rhode Island Family Court. It consists of several attorneys who are knowledgeable in juvenile law, social workers and volunteers from the community." 03-011-001 R.I. Code R. (2009).

appointed representatives and thereby concluded that a suit by Next Friend was inappropriate. Plaintiffs contend, however, that nothing in the Rhode Island statutes and regulations dealing with court appointed guardians ad litem or CASA attorneys authorizes these advocates to represent children beyond the confines of the family court proceedings in which they are appointed. Defendants explain that guardians ad litem under Rhode Island law have authority to represent children in family court proceedings up until the child is adopted and they maintain the district court was correct in holding the guardians ad litem are the children's duly appointed representatives.

State law generally governs an individual's capacity to represent a minor or incompetent in federal court. Fed. R. Civ. P. 17(b)(3) (stating that an individual's capacity to sue in a representative capacity is determined by "the law of the state where the court is located"); Melton, 689 F.2d at 285. We thus exercise plenary review over the district court's determination regarding Rhode Island law. Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991). We also review de novo the district court's interpretation of Rule 17(c). See NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 5 (1st Cir. 2002) (reviewing de novo the court's interpretation of Federal Rule of Civil Procedure 12(c)).

Under Rhode Island law, the family court has authority to "[a]ssure that a guardian ad litem and/or a court appointed special

advocate [is] appointed to represent the child."[8]  R.I. Gen. Laws § 40-11-7.1 (b)(3); see also § 40-11-14.  Family court-appointed guardians ad litem or CASA attorneys represent a minor throughout the course of the family court proceedings in which they are appointed.  Zinni v. Zinni, 238 A.2d 373, 376 (R.I. 1968).  If the child is placed under DCYF custody, the guardian's representation continues throughout family court proceedings until a petition for adoption is granted.  In re Christina D., 525 A.2d 1306, 1308 (R.I. 1987).

In construing the scope of a guardian ad litem's authority, the Rhode Island Supreme Court has explained that the family court exercises its power of appointment "to the end that the guardian . . . can assist the court in determining the rights of the minor in the tribunal where the guardian is appointed." Zinni, 238 A.2d at 376 (emphasis added).  Rhode Island courts also recognize that where a guardian is properly appointed to represent the child in family court proceedings, the guardian's authority may extend to appellate proceedings, provided that the minor's interests are involved on appeal.  Id.

---

[8] An amicus brief filed by the National Association of Counsel for Children ("NACC") in conjunction with other nonprofit and public interest organizations, explains that Rhode Island's regulations regarding family court guardians ad litem or CASA attorneys are consistent with national standards of practice that limit the attorneys' authority and responsibilities to child welfare and dependency matters brought before the court in which the attorney is appointed.

While a family court appointment allows the guardian to represent her ward on appeal, we have not found any Rhode Island authority for the proposition that guardians appointed by the family court have power to represent their wards in non-family court proceedings.[9]  Moreover, Rhode Island law seems to cabin the guardian ad litem's authority to the proceedings in which the guardian is appointed.  See R.I. Gen. Laws § 40-11-7.1 (b)(3), § 40-11-14; see also Exec. Order, R.I. S. Ct. No. 2004-02 at 2, ("Court appointed counsel . . . provide representation throughout all stages of adjudication in Family Court.").

Not just any guardian is allowed to represent a minor or incompetent in federal court.  See Morgan, 157 U.S. at 197 (stating that a guardian's authority is generally limited to the state court and explaining that a guardian may only sue in a federal court sitting in another state if the laws of the state allow the foreign guardian to seek relief).  Since it does not appear that Rhode Island law confers general authority on guardians ad litem or CASA attorneys to represent the children outside family court proceedings, we find that the children's guardians ad litem cannot

---

[9]  The amicus brief filed by the NACC explains that in many instances, guardians ad litem or CASA attorneys may be unable to represent the children in federal court due to large caseloads. For example, a report issued by the Rhode Island Family Court reveals that CASA attorneys on average manage 400 cases.  NACC's Amicus Br. at 21 citing, Jeremiah S. Jeremiah, Jr., Chief Judge, Judiciary of Rhode Island, Family Court: Overview of its Departments and Functions (2006), http://www.courts.state.ri.us/family/overview.htm.

be considered the children's general guardians, like fiduciaries or duly appointed Rule 17(c) representatives.[10]  Thus, the district court erred in finding that the state-appointed guardians ad litem or CASA advocates precluded Plaintiffs from filing suit by a Next Friend.[11]

**B.**

Defendants further claim that Plaintiffs have the burden of showing that the children's relatives either approved the filing of the federal suit on the children's behalf or did not oppose it. It is their contention that the Child Advocate's allegation that

---

[10]  The district court stated that the guardians ad litem were the children's duly appointed representatives.  However, it never clarified whether it considered the guardians ad litem to be the children's "general guardian, committee, conservator or like fiduciary."  Fed. R. Civ. P. 17(c)(1).  To the extent that the district court found the guardians ad litem were the children's "dully appointed representatives," we assume that the court considered, without stating so, that the guardians met the requirements of a Rule 17(c)(1) representative.

[11]  We recognize that in the exercise of its discretion to appoint a Next Friend under Rule 17(c)(2), a federal court may find that a state-appointed guardian ad litem may serve as a minor's duly appointed Rule 17(c) representative if the guardian petitions the federal court to represent the child and the court finds the guardian is an appropriate Next Friend.  See M.K. through Hall v. Harter, 716 F. Supp. 1333, 1335 (E.D. Cal. 1989) (finding that a state-appointed guardian ad litem could serve as a minor's Rule 17(c) representative); see also Susan R.M. by Charles L.M. v. Ne. Indep. Sch. Dist., 818 F.2d 455 (5th Cir. 1987) (holding that where state law vests authority on a state-appointed managing conservator to bring actions on behalf of a minor, the conservator could bring a federal suit as the infant's representative, thereby depriving the infant's father of "standing" to pursue a federal suit as Next Friend).  In the present suit, however, the state-appointed guardians ad litem have not requested appointment as Next Friends.

"[t]he persons most closely connected to the children, including foster parents, guardians ad litem, or relatives, either posed a potential conflict or expressed concern regarding possible retaliation from [DCYF] or other state entities and declined to become involved," is insufficient to allow the proposed Next Friends to represent the children.

The record shows that Plaintiff David has an older brother who called David on a weekly basis and visited him at least twice from 2004 through 2007. Although Caesar's parents lost their parental rights and Caesar was placed for adoption in 2007, in 2003 and 2004 Caesar was placed with a paternal aunt and in 2005 he was placed with his paternal grandmother. Likewise, although Plaintiffs Danny and Michael are under the legal guardianship of the DCYF, the record shows that in 2005 Michael was placed under the care of his maternal great grandmother. As to Plaintiffs Sam and Tony, the record reveals that their grandparents regularly visited the boys from April to July 2006.

While the children may have maintained contact with some relatives, there is no indication that these relatives could serve as the children's general guardians or representatives. In examining an individual's suitability to pursue a federal suit as a Next Friend, we have found that no Next Friend appointment is needed where a minor or incompetent has a general or duly appointed guardian who is available to represent the minor or incompetent and

who opposes the filing of the federal suit by a Next Friend. Melton, 689 F.2d at 285-86 (holding that minor's mother, who was considered the minor's natural guardian under state law and had acted in the past to safeguard the minor's well-being, could be recognized as the minor's representative). But we are not here faced with plaintiffs who have general guardians who could preclude a Next Friend appointment or whose consent may be needed to file suit in federal court. See Garrick, 888 F.2d at 693 (holding that a minor's mother lacked authority to proceed as Next Friend in suit where the court had appointed a guardian ad litem to represent the child as to that particular matter). In this case, the children's relatives have not moved to represent them in federal court; there is no indication that they are willing or able to represent them; and Plaintiffs have alleged that these relatives either refused or are unable to sue on their behalf.[12]

Moreover, Plaintiffs have been placed under the legal custody and/or guardianship of the state of Rhode Island. It is thus reasonable to conclude that the adults with whom Plaintiffs

_____

[12] Because Plaintiffs sued Defendants for the DCYF's alleged abuse of its trust and fiduciary duties as the children's legal custodian, we cannot sanction Defendants' attempt to oppose a Next Friend appointment and deflect a suit filed against them on the basis of a general assertion that the children may have other relatives who could represent them or who should be consulted. Given that Defendants effectively control the children's lives as the children's legal custodian, we think they are ideally suited to show that the children have relatives who could serve as the children's representatives. They have failed to do so.

have maintained some contact are not willing, able, or available to pursue a legal action against the state of Rhode Island.[13]  See Greenburgh, 873 F.2d at 30 ("since the Children are no longer in the care and custody of their natural parents, those adults have little involvement with the daily aspects of the Children's schooling and are not likely to prosecute this type of action"). In these circumstances, Rule 17(c) allows federal courts discretion to appoint a Next Friend to represent the children in federal court.  Id. at 29.

## C.

Where as here, a minor lacks a general guardian or a duly appointed representative, the court has discretion to appoint a Next Friend.  The district court found that the proposed Next Friends lacked a significant relationship with the children and therefore dismissed the lawsuit.  In so holding, the district court interpreted the Supreme Court's decision in Whitmore v. Arkansas, 495 U.S. 149 (1990), as requiring an individual who wishes to serve as Next Friend to show that she has a "substantial relationship" with the minor or incompetent.

---

[13]  Plaintiffs Caesar, David, Danny, and Michael, are under the DCYF's legal guardianship.  Because the children's parents or natural guardians are unavailable, it is reasonable to conclude that the children lack general guardians or representatives to pursue the present suit against their legal guardian. While it appears that Sam and Tony M.'s mother still enjoys her parental rights, the boys are candidates for adoption and there is no indication in the record that after losing custody of the boys in 1999, the mother is available to represent the children.

- 21 -

Defendants understand the Supreme Court's decision in Whitmore to require a significant relationship between a Next Friend and the real party in interest. But Defendants also argue that regardless of whether Whitmore should be read to require a significant relationship as a prerequisite for Next Friend status, the district court was correct in considering the existence of a significant relationship as a factor in assessing the propriety of appointing the proposed Next Friends to represent Plaintiffs. In contrast, Plaintiffs contend that Whitmore does not require a significant relationship as a prerequisite to Next Friend standing and they explain that the difficulties foster care children face in forging lasting and significant relationships cautions against requiring a significant relationship in these cases.

This is the first time we expound the criteria a Next Friend should meet in the context of a suit filed on behalf of foster care children. We undertake this analysis with guidance from other courts that have tailored the Next Friend analysis to the realities of foster care children and to the general principle that litigants should be afforded access to federal courts in pursuit of their constitutional and statutory rights. We also acknowledge the helpful amicus brief filed by the Field Center for Children's Policy, which illustrates the realities of foster care children and explains that due to maltreatment, multiple placements, and social and psychological issues, foster care

children are often unable to forge significant relationships with the adults that are entrusted to protect the children's interests. The fact that Plaintiffs filed suit against their legal guardian for alleged violations of the state's obligations as their guardian and custodian further informs our analysis.

Next Friend capacity is not lightly granted to any individual who petitions a federal court to pursue an action on behalf of another. Id. at 163. Rule 17(c) recognizes that an individual may represent the real party in interest as a Next Friend but it offers no clear guidance regarding who may proceed as a Next Friend. In the context of a petition to appeal a state court conviction on behalf of a death row inmate, the Supreme Court held in Whitmore that a Next Friend should comply with "two firm prerequisites:" (1) an adequate explanation-such as inaccessibility, mental incompetence, or other disability-why the real party in interest cannot appear on his own behalf to prosecute the action; and (2) a showing that the Next Friend is "truly dedicated to the best interests of the person the Next Friend seeks to represent." Id. While the Supreme Court recognized that some courts have "suggested" that a Next Friend must also have a significant relationship with the real party in interest, the Court did not hold that a significant relationship is a necessary prerequisite for Next Friend status. Id. at 163-64; see also Whitmore, 495 U.S. at 177 (Marshall, J., dissenting) (recognizing

that the majority opinion suggested, without holding, that a Next Friend may have to prove she has "some significant relationship with the real party in interest").

Just as the parties in this case dispute whether Whitmore should be interpreted to require a significant relationship between a proposed Next Friend and the real party in interest, federal courts have debated, mainly in the context of prisoner habeas litigation, whether and to what extent a significant relationship is or should be required for Next Friend status. This Court has not decided whether a Next Friend must meet the significant relationship requirement as a prerequisite to Next Friend status. See Figueroa v. Rivera, 147 F.3d 77, 82 (1st Cir. 1998)(declining to appoint Next Friend in the prisoner litigation context after finding that the real party in interest had capacity to pursue the habeas petition and explaining that an individual who seeks to file a habeas petition as a prisoner's Next Friend needs to show "there is a valid reason why she is better situated than the prisoner to pursue the writ"). However, other circuit courts have held that some sort of significant relationship is necessary to assess an individual's suitability to pursue a habeas petition on behalf of another.

For example, in Hamdi v. Rumsfeld, the Fourth Circuit interpreted Whitmore as requiring a finding that the proposed Next Friend has a significant relationship with the real party in

interest. 294 F.3d 598, 604 (4th Cir. 2002) (declining to confer Next Friend standing to public defender and private citizen to pursue habeas petition on behalf of military detainee where the proposed Next Friends had no prior relationship or communication with petitioner); see also Padilla v. Rumsfeld, 352 F.3d 695, 703 n.7 (2d Cir. 2003)(assuming there is a significant relationship requirement for Next Friend status and finding that an attorney had a significant relationship with petitioner where the attorney had advised petitioner during his military confinement; interviewed petitioner and met with his family; and represented petitioner during the course of legal proceedings related to his confinement), overruled on other grounds by Rumsfeld v. Padilla, 542 U.S. 426 (2004); Centobie v. Campbell, 407 F.3d 1149 (11th Cir. 2005) (holding that public defender lacked a significant relationship with petitioner where the attorney had never represented petitioner and lacked any other relationship with him).

In Hamdi, however, the Fourth Circuit court declined to decide "how significant" the relationship had to be to satisfy Next Friend status. 294 F.3d at 604. More importantly for our analysis, the court clarified that where an individual "has no significant relationships," a significant relationship might not be required in order to allow the person to proceed through a Next Friend. Id. ("We do not have here the situation of someone who has no significant relationships. If we did, this might be a different

case."). Similarly, the Ninth Circuit has cautioned that "the contours of the requisite 'significant relationship' do not remain static, but must necessarily adapt to the circumstances." Coal. of Clergy, Lawyers & Professors v. Bush 310 F.3d 1153, 1162 (9th Cir. 2002). Therefore, where the real party in interest lacks "a relative, friend, or even a diplomatic delegation able or willing to act on their behalf[,] . . . a person with 'some' relationship conveying some modicum of authority or consent, 'significant' in comparison to the detainee's other relationships, could serve as the next friend." Id.

In evaluating an individual's capacity to serve as Next Friend for minors who lack ties with their parents and family members, federal courts have rejected a rigid application of the significant relationship requirement, holding that the common-law concept of Next Friend is capacious enough to include individuals who pursue a suit in good faith on behalf of a minor or incompetent. See Greenburgh, 873 F.2d at 30; Dwayne B. v. Granholm, No. 06-13548, 2007 WL 1140920 (E.D. Mich. April 17, 2007)(allowing foster care children to appear in federal court by Next Friends who had met the children through the state's foster care system and finding that plaintiff's former foster care parent was an adequate Next Friend as she was familiar with the child's circumstances); Child v. Beame, 412 F. Supp. 593, 599 (S.D.N.Y. 1976). In this vein, the Second Circuit held in Greenburgh that

"court[s] should consider the good faith of those claiming to speak for the infant and satisfy [themselves] that the 'next friend' is motivated by a sincere desire to seek justice on the infant's behalf." 873 F.2d at 30.

In contrast, the Seventh Circuit adheres to the view that in the interest of discouraging suits by individuals who do not have concrete stakes in a litigation and who only have ideological stakes in the minor's case, Whitmore should be read to require a significant relationship. T.W. & M.W. by Enk v. Brophy, 124 F.3d 893, 897 (7th Cir. 1997) ("not just anyone who expresses an interest in the subject matter of a suit is eligible to be the plaintiff's next friend."). Although the Seventh Circuit seems to have adopted the significant relationship requirement, it also clarified that

> if a close relative is unavailable and the child has no conflict-free general representative the court may appoint a personal friend of the plaintiff or his family, a professional who has worked with the child, or, in desperate circumstances, a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation.

Id.

While we agree that the significant relationship requirement may avert litigation by individuals who lack a concrete stake in the litigation, and also "enhances the probability that a petitioner is a suitable Next Friend," Coal. of Clergy, Lawyers &

- 27 -

Professors, 310 F.3d at 1162, we believe that because these foster care children lack significant ties with their parents and have been placed under the state's legal custody and guardianship, a significant relationship need not be required as a prerequisite to Next Friend status. Important social interests are advanced by allowing minors access to a judicial forum to vindicate their constitutional rights through a Next Friend that the court finds has a good faith interest in pursuing a federal claim on the minor's behalf; particularly where, as here, the minors seek relief for alleged violations of the guardian's duty to protect them.

In determining whether a proposed Next Friend is "truly dedicated to the best interests" of the minor, courts may consider the individual's familiarity with the litigation, the reasons that move her to pursue the litigation, and her ability to pursue the case on the child's behalf. Evidence that the proposed Next Friend has met the child he seeks to represent certainly enhances the individual's suitability as a Next Friend. See id. at 1162 (explaining that the more attenuated the relationship between the proposed Next Friend and the real party in interest, the less likely the Next Friend can know the party's best interests). But access to federal courts need not be denied to a minor Plaintiff if the court finds that the proposed Next Friend has a good faith belief that she can adequately represent the child in federal court. As the Second Circuit aptly stated in Greenburgh, "[w]e

- 28 -

would not sanction any attempt to assert the legitimate rights of children as a mere pretext for advancing ulterior political or economic aims."  873 F.2d at 31.

Having clarified the hallmarks a Next Friend should bear, and given that the record developed by the district court amply reveals the extent of the proposed Next Friends' interest in the present suit and the reasons why they chose to litigate the present suit on the children's behalf, we proceed to determine whether they are suitable Next Friends.  We examine each Next Friend in turn.

**1. Ms. Melvin, Next Friend to David**

Ms. Melvin served as a foster parent in the Rhode Island foster care system for twenty years.  She took David as her foster child in 1996 and had David under her care and custody for two years.  During David's stay with Ms. Melvin, Ms. Melvin had some contact with DCYF social workers and attended various Family Court proceedings.  After David was removed from her home to be placed for adoption, Ms. Melvin was allowed to visit him at the shelter in which he was placed and was even able spend some days with him. She lost contact with David and has not seen him since approximately 1998.

Ms. Melvin testified that she agreed to be David's Next Friend because she considers David part of her family and is willing to help him.  She explained that as a Next Friend to David she is trying to "help make things better for him."  She understood

that as David's Next Friend she could be called to participate in settlement discussions and she would have to make decisions on David's behalf.

On the basis of this evidence, Ms. Melvin has demonstrated she is acting in good faith and is genuinely motivated to help David seek relief in federal court. Although Ms. Melvin need not necessarily show she had a significant relationship with David, it is undeniable that she is familiar with David's situation as she cared for him for two years, and is aware of the inner workings of the foster care system having served as a foster mother for twenty years. Ms. Melvin's suitability is not undermined by the fact that she has not seen David for several years given that there is no indication that she is pursing this litigation for reasons other than protecting David's interests. We thus find that Ms. Melvin may proceed as David's Next Friend.

**2. Kathleen Collins ("Ms. Collins"), Next Friend to Caesar**

Ms. Collins was Caesar's school psychologist during the 2006-2007 school year. Ms. Collins testified that she worked with Caesar in the classroom setting as well as outside of class and was able to "bond" with Caesar during that year. She last saw Caesar towards the end of May 2007 and was unable to contact him despite attempts to do so.

Collins testified that she has worked with a number of foster care children. She understands that a Next Friend appears

before the court to "represent the interests of [a] particular child in getting justice from the system, to assist . . . and support him in seeking some sort of . . . justice." Collins testified that she agreed to be Caesar's Next Friend because she believes this is an important case and the children deserve justice. She stated she was available to pursue the lawsuit and agreed she would be available to make decisions on Caesar's behalf.

It is beyond question that Ms. Collins wishes to represent Caesar's interests in this lawsuit in order to protect his interests. Her suitability as a Next Friend is certainly enhanced by the fact that she knows Caesar and is familiar with his situation. Ms. Collins understands her role as Next Friend and is willing and able to litigate on Caesar's behalf. She is also familiar with the realities foster care children face and has shown an interest in helping Caesar. This is enough to show she is truly dedicated to Caesar's best interests. We believe that Ms. Collins is a suitable Next Friend to Caesar.

### 3. Gregory Elliot ("Dr. Elliot"), Next Friend to Sam, Tony, Danny, and Michael[14]

Dr. Elliot is an Associate Professor of Sociology at Brown University with a focus on child maltreatment. Dr. Elliot admitted he has not met the children or their relatives but

---

[14] Dr. Elliot also petitioned to sue as Next Friend for Deanna. The record shows that Deanna was adopted and therefore the suit became moot as to her.

explained that due to his research on social psychology and child maltreatment, he is familiar with the circumstances foster care children face while in the state's custody. He understands that a Next Friend is "someone . . . of legal competence who acts on behalf of minors who have no legal competence in the court." Dr. Elliot testified that after studying the complaint and the documents filed in the case regarding the children's situation, he believes the children have been placed in dire circumstances and concluded it was in the children's best interests to pursue the present suit.

The district court found that because Dr. Elliot had not met the children and had not reviewed the children's family court and medical files, he could not serve as Next Friend. We do not believe this automatically disqualifies him as a Next Friend, however. Dr. Elliot testified he is aware of the issues and problems children face in foster care and he is familiar with the perils to which Plaintiffs have been exposed. He showed that due to his expertise and research he has a good faith desire to pursue the children's best interests in federal court. We find no evidence that Dr. Elliot is akin to the often feared ideologue that pursues an action for purely political or ideological reasons. Nothing in the record questions Dr. Elliot's good faith or indicates that he is pursuing the present suit for reasons other than a genuine concern for the children's well-being. Dr. Elliot

is adequately prepared and willing to actively prosecute the types of claims the children have raised against the state of Rhode Island. We thus find that Dr. Elliot is an appropriate Next Friend.

Although appointment of a Next Friend is not mandatory, nothing in the record intimates that the proposed Next Friends are not acting in good faith or that they won't be able to pursue this suit on the children's behalf. We thus find that the proposed Next Friends are suited to represent the children in this case.[15]

### IV.

For the foregoing reasons the order of the district court dismissing the complaint is reversed. We remand the case with directions to reinstate the complaint and allow Ms. Melvin, Ms. Collins, and Dr. Elliott to proceed as the children's Next Friends.

**Reversed and Remanded**.

---

[15] Because we find that the district court abused its discretion in declining to appoint the proposed Next Friends to represent Plaintiffs, we need not address the propriety of the court's decision to dismiss the complaint without appointing other Next Friends. See Adelman on Behalf of Adelman v. Graves, 747 F.2d 986, 989 (5th Cir. 1984)(reversing the district court's dismissal of complaint filed on behalf of an incompetent and holding that the district court improperly dismissed the case without first determining whether the incompetent's interests were adequately represented); Gardner, 874 F.2d at 140 (holding that the district court, after finding that the proposed Next Friends were inadequate, "should have appointed a next friend or at the least held a hearing to determine whether a next friend should be appointed").